IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| STACY L. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:12-CV-00456-APR |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on the petition for judicial review of the decision of the Commissioner of Social Security filed by the plaintiff, Stacy Hall, on June 24, 2013. For the reasons set forth below, the decision of the Commissioner is **REMANDED**.

Background

The plaintiff, Stacy Hall, applied for Disability Insurance Benefits and Supplemental Security Income on October 13, 2006, alleging a disability onset date of August 24, 2006. (Tr. 25-28, 223-229) Her claim initially was denied on May 1, 2007, and again denied upon reconsideration. (Tr. 88-94) Hall requested a hearing before an Administrative Law Judge ("ALJ"). A hearing before ALJ John Mondi was held on December 3, 2009, at which Hall and Medical Expert James McKenna, M.D. testified. There was no vocational expert testimony. (Tr. 42-87)

On September 16, 2010, the ALJ issued a decision denying benefits. (Tr. 22-41) The Appeals Council denied review on July 9, 2012. (Tr. 14-20) Hall proceeded to file her

1

complaint with this court on June 24, 2013. Hall alleges that the ALJ erred by improperly analyzing her mental impairments. Hall further alleges that the ALJ's residual functional capacity, credibility, and Step Four determinations were improper.

At step one of the five-step sequential evaluation process for determining whether an individual is disabled, the ALJ determined that Hall had engaged in substantial gainful activity since August 24, 2006, her alleged onset date. (Tr. 28) However, Hall's employment subsequent to 2008, including that at the time of the hearing, was not disqualifying substantial gainful activity. (Tr. 28)

At step two, the ALJ determined that Hall had the following severe impairments: obesity, anticoagulation condition resulting in a tendency for blood clotting, migraine headaches, and ankle swelling. (Tr. 28-29) The ALJ found that these impairments caused more than a minimal limitation in Hall's ability to engage in work activity. (Tr. 28) He also found that Hall's mental impairments did not cause more than minimal limitations in her ability to perform basic mental work activities, so they were not severe. (Tr. 29) In considering the four functional areas, the ALJ found that Hall had no restrictions in activities of daily living and that she was able to perform personal care tasks, including household chores, without reminders, and had no problems handling her personal finances. (Tr. 29) The ALJ found that Hall had mild limitations in social functioning, noting that she was able to drive, go out in public, and get along well with authority figures. (Tr. 29) The ALJ also noted mild limitations with regard to concentration, persistence and pace. Dr. Larson, Ph.D., noted that Hall was able to follow written and verbal instructions and could manage personal finances. (Tr. 29) The ALJ found that Hall had no episodes of decompensation which had been of extended duration. (Tr. 29) Because she had no

2

more than mild limitations in the first three functional areas and no episodes of decompensation, the ALJ concluded that Hall did not satisfy the Paragraph B criteria. (Tr. 29)

At step three, the ALJ found that Hall did not meet or medically equal any listed impairment. (Tr. 30)

In determining Hall's RFC, the ALJ discussed all of Hall's symptoms and the extent the symptoms reasonably could be accepted as consistent with the objective medical evidence and other evidence. (Tr. 30) In doing so, the ALJ followed a two-step process: first determining whether there could be a medically acceptable basis for her complaints, and second evaluating the "intensity, persistence, and limiting effects of the claimant's symptoms" to determine if they limited her work ability. (Tr. 30) The ALJ found that Hall's testimony of pain, other symptoms, and functional limitation were not credible when compared against the objective evidence and evaluated using the factors in SSR 96-7p. (Tr. 30) The ALJ determined that Hall had the RFC to do "light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with a sit/stand option and not requiring climbing of ladders ropes of scaffolds; or more than moderate exposure to cutting situations or sharp objects." (Tr. 30)

In his RFC analysis, the ALJ provided a brief summary of Hall's medical history. (Tr. 30-31) He noted that emergency room notes from December 25, 2009 reflected Hall's complaints of shortness of breath and chest pain. Hall also reported that she had been working at a desk job until recently laid off and that she currently was working an evening shift at Wal-Mart, a job she described as too physically taxing. (Tr. 30) The examining physician stated that Hall's headaches could be related to a Nitroglycerin patch which she ordered removed. (Tr. 30)

The ALJ next explained that records received after the hearing did not reduce Hall's RFC. (Tr. 30) The test of her lower left extremity performed on April 10, 2008 did not show

deep vein thrombosis, and Dr. Rosenberg, Hall's treating physician, had released her to work without restrictions on September 8, 2008. (Tr. 30)

The reviewing DDS physician concluded that Hall could perform medium work. (Tr. 31) However, the ALJ gave this opinion reduced weight because it was reached without the more extensive record made available to the medical expert. (Tr. 31) The ALJ adopted the opinion of a state agency psychologist who concluded on April 30, 2007 that Hall had an affective disorder that was not a severe impairment, noting that it was consistent with the medical and other evidence, including recent treatment notes and testimony. (Tr. 31)

The ALJ then explained that Hall had begun treatment at the Ben Gordon Center in November 2008 and saw a psychiatrist twice and a therapist twice for major depression and panic disorders. (Tr. 31) The ALJ stated that a worsening in Hall's mental condition because of her mother's illness and death were understandable. (Tr. 31) The ALJ noted that Hall had experienced depression and panic attacks and that she had been hospitalized for suicide attempts on five occasions. (Tr. 31) The ALJ also noted that Hall's reported medical history included congestive heart failure, Hashimoto's thyroiditis, migraine headaches, protein deficiencies, and deep vein thrombosis in 2002 and 2006. (Tr. 31) On November 9, 2009, Hall was assessed with a global assessment of functioning (GAF) score of 40, and on November 12, 2009 had a score of 45. (Tr. 31) The ALJ concluded that the objective medical evidence and Hall's activities, including her continued work activity, supported his RFC determination. (Tr. 31)

At step four of the ALJ's opinion, he concluded that Hall was able to perform her past relevant clerical work. (Tr. 31)

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Pepper v. Colvin***, 712 F.3d 351, 361-362 (7th cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852 (1972)(*quoting* **Consolidated Edison Company v. NRLB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* **Pepper,** 712 F.3d at 361-362; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue,*** 705 F.3d 631, 636 (7th Cir. 2013)*; Rice v. Barnhart*, 384 F.3d 363, 368-369 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable " to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.**" 42**

**U.S.C. §423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § § 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R.§§ 404.1520(b), 416.920(b).** If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e).** However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f).**

Hall first complains that the ALJ did not consider her mental impairments adequately. Hall argues that the ALJ should not have relied on Dr. Joelle Larson's opinion because it was prepared two and a half years before the hearing and because Hall's mental impairments deteriorated after the opinion was prepared. At the time Dr. Larson prepared her opinion, Hall

6

only had been diagnosed with a GAF score of 61, but she later was assigned six scores below 50 as a result of her increasingly severe symptoms. Hall refers the court to her November 2, 2009 treatment notes, where she was diagnosed with a GAF score of 40, reported frequent panic attacks that caused her to experience an increased heart rate, sweating, shortness of breath, feelings of choking, chest pain, nausea, dizziness, derealization, fear of dying, chills, hot flashes, depressed mood, loss of pleasure in activities, weight gain, insomnia, psychomotor agitation, fatigue, and decreased concentration. She subsequently was diagnosed with recurrent major depressive disorder, PTSD, and panic disorder with agoraphobia. Hall's doctor also noted that she was "increasingly depressed and suicidal" and had "been thinking of taking a whole bunch of prescription medications to kill herself." (Tr. 1102)

Hall also argues that the ALJ did not adequately establish an accurate and logical bridge between the decision and the evidence when giving weight to Dr. Larson's opinion. Hall complains that the ALJ did not provide any explanation for why he discounted the treatment records and assigned greater weight to Dr. Larson's opinion. The ALJ did not point to any specific evidence that supported Dr. Larsen's opinions. Moreover, he also failed to incorporate the mild limitations Dr. Larsen noted into the RFC finding.

Hall also has referred to a medical assessment prepared by one of her treating mental health therapists, Katherine Stephenson, which stated that Hall had poor to no ability to use judgment, deal with stress, maintain attention or concentration, understand, remember, carry out complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations. Hall argues that the ALJ did not even consider this evidence.

The Commissioner has acknowledged that the ALJ should have explained the weight he assigned to Stephenson's opinion but argues that the ALJ's failure to do so was harmless error

7

because Stephenson provided no objective evidence to support her opinion of Hall's mental functioning and her treatment notes included few clinical examination findings of significance.

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. *See* **Morphew v. Apfel**, 2000 WL 682661 at *3 ("There is a distinction here [in SSR 96-8p] between what the ALJ must consider and what the ALJ must articulate in the written opinion."); **Lawson v. Apfel**, 2000 WL 683256, *2-4 (S.D.Ind. May 25, 2000) (ALJ who restricted the claimant to medium work satisfied the requirements of SSR 96-8p)("[SSR 96-8p] does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Rather, an ALJ must explain how the evidence supports his or her conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work activities.").

The Commissioner argues that Hall did not show how consideration of Stephenson's opinion would have altered the ALJ's disability determination because it was not well supported. The court disagrees. Hall has pointed to numerous notes prepared by Stephenson that contradicted the ALJ's conclusion. Stephenson stated that Hall had poor to no ability to engage in a number of activities and assigned GAF scores that related serious difficulties. Although the Commissioner argues that Stephenson's opinions were not supported by clinical findings or the record as a whole, the ALJ should have articulated this in his opinion. It is not clear from the record whether the ALJ even considered Stephenson's opinion, and he certainly did not explain why he chose to disregard Stephenson's contradictory opinions as required under SSR 96-8p. This is of particular importance because although Stephenson was not a psychiatrist, she treated Hall for a substantial period of time. **20 C.F.R. § 404.1527(d)(2) (**explaining that a treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record)**;** *See also* **Punzio v. Astrue,** 630 F.3d 704, 710 (7th Cir. 2011); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007); **Gudgell v. Barnhart**, 345 F.3d 467, 470 (7th Cir. 2003). For these reasons, the court finds that the ALJ did not satisfy his obligations under SSR 96-8p, and must explain his reason for disregarding Stephenson's opinions on remand.

Hall also challenges the ALJ's reliance on Dr. Larson's opinion, arguing that it was not supported by the evidence of record. The Commissioner argues that the ALJ properly determined Hall's RFC in light of all of the evidence of record. The ALJ's decision was supported by the medical expert and was more restrictive than the opinions of two reviewing state agency physicians and the opinion of one of Hall's treating physicians which stated that she

9

could return to work without limitation in September 2008. The ALJ also gave substantial deference to Hall's testimony.

Upon review of the ALJ's RFC determination, he gave a cursory review of the evidence and did not explain what evidence supported Dr. Larson's opinion. Beyond stating that Dr. Larson's opinion was consistent with the medical and other evidence, including recent treatment records and the medical records, he did not identify any specific recent evidence that was consistent. In fact, the only records the ALJ did refer to specifically was that Hall had been hospitalized for suicide attempts five times, could not afford her prescriptions, and was assigned GAF scores of 40 and 45, which indicated serious symptoms with regard to Hall's overall ability to function. On remand, the ALJ must provide a more detailed explanation to show why he assigned great weight to Dr. Larson's opinion.

Hall's next argument is that the ALJ rendered an improper credibility determination because he failed to discuss Hall's daily activities as impacted by her impairments, the frequency and intensity of the migraines, the side effects of the medication, Hall's efforts to relieve the pain by secluding herself, and the side effects she experienced from her medications.

This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is

10

not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir.2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529**(c); *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1. *See also Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th

11

Cir. 2004); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).
>
> *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see also Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." **SSR 96-7p, at *2**. *See Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). He must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski*, 245 F.3d at 887 (*quoting Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the ALJ is rejecting. *See Zurawski*, 245 F.3d at 888 (*quoting Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both

the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

The Commissioner has responded only that the ALJ did consider the severity of Halls symptoms, her daily activities, including her work activity, the physician's opinions, and the evidence showing that Hall sought emergency room treatment for her headaches. Even the Commissioner's response was cursory and did not show any connection between Hall's statements and the evidence of record. The ALJ did not discuss any of Hall's daily activities with the exception of her job, which she testified was too taxing. However, the ALJ did not state why he did not believe this statement or identify which evidence contradicted it. Nor did he mention any of Hall's other daily activities or the side effects from her medications.

Although the ALJ was permitted to consider Hall's employment following her alleged disability onset date, he did not address her testimony regarding the frequency of her employment and her sporadic attendance. Specifically, Hall testified that she was let go of one job because she was too slow and missed three days of work over a two month period, and she also stated that she missed five days over the course of two months at another job because of her migraines. Even if the ALJ determined that Hall's migraines were treated with medication or not as severe or frequent as she testified, the ALJ did not acknowledge the side effects Hall alleged to have suffered from her medications and the effect they had, if any. Nor did the ALJ explain the effect that Hall's migraines had on her activities of daily living. On remand, the ALJ must provide some explanation of the reasons why he discredited Hall's testimony.

Finally, Hall complains that the ALJ did not obtain the necessary testimony from the vocational expert. The ALJ concluded that Hall could perform work as a clerical worker by

comparing Hall's RFC with the physical and mental demands of the work she had done over the past 15 years. As the Commissioner points out, Hall did not identify any clerical tasks that Hall could not perform if she was capable of the RFC that the ALJ found. Therefore, this does not create grounds for remand. However, in reassessing the RFC, the ALJ may need to readdress this step on remand.

Based on the foregoing reasons, the decision of the Commissioner is REMANDED for further proceedings consistent with this order.

ENTERED this 7th day of February, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge